Dear Representatives Istook,
¶ 0 The Attorney General has received your letter asking for an official opinion addressing, in effect, the following question:
Does a board of education of a school district which isself-insured against workers' compensation liability pursuant to85 O.S. 2b(A)(3) (1989) have the authority to utilize theprocedures set forth in 85 O.S. 42 (1989) to fund its workers'compensation in lieu of appropriating funds or securingreinsurance or excess insurance?
 INTRODUCTION
¶ 1 The dispositive issue may be restated as follows: may a school district fund its workers' compensation coverage from the sinking fund by allowing workers' compensation awards against the school district to be reduced to judgment.
¶ 2 A sinking fund is a fund available to municipalities, counties and school districts to levy ad valorem taxes to pay among other things, a judgement or any part of the judgment rendered against the school district. See McMahan v. Board ofEducation of Oklahoma City, 285 P. 953 (Okla. 1930).
¶ 3 The answer to your question is governed by the provisions of the Workers' Compensation Act. A short introductory statement regarding the effect of the Act is necessary to the following analysis of 85 O.S. 2b and 85 O.S. 42. The Workers' Compensation Act was enacted by the 1st Session of the 36th Oklahoma Legislature, by 85 O.S. 1 et seq., Chapter 234, O.S.L. 1977 (85O.S. 1 (1978) et seq.). The Act is constitutional. Carroll v.District Co. of Fifteenth Jud. Dist., 579 P.2d 828 (Okla. 1978);Pine v. Davis, 145 P.2d 378 (Okla. 1944); Tom Dolan HeatingCo. v. Feverston, 73 P.2d 115 (Okla. 1937). The provisions of the Act are mandatory and not elective. Sheehan Pipe Line Const.Co. v. State Industrial Commission, 3 P.2d 199, (rehearing denied Okla. 1931); Lambert v. Inryco, Inc., 569 F.Supp. 908
(W.D. Okla. 1983).
¶ 4 In Carroll v. District Co., Id., the Oklahoma Supreme Court stated:
 The Workmen's Compensation Act abrogated common law right of action for damages by an employee and substituted an exclusive remedy in place of all other liability of the employer or any coemployee. The Act is exclusive in the field in which it operates and provides both the relief afforded and the methods for administering. The Act is mandatory and not elective in operation. Citations omitted.
579 P.2d at 830.
¶ 5 The Act requires all employers to secure workers' compensation coverage for the benefit of their injured employees.85 O.S. 61 (1989), State Auto Cas. Underwriters v.Mid-Continent Cas. Co., 512 P.2d 1405 (Okla.App. 1972). A public entity employer is likewise required by the Act to provide workers' compensation coverage to qualified employees. 85 O.S.2b (1989).
 ANALYSIS OF 85 O.S. 2b (1989).
¶ 6 All public entities of the State of Oklahoma are required to provide workers' compensation coverage for their employees.85 O.S. 2b(A) (1989). This statute provides in relevant part:
 All public entities of this state, their agencies and instrumentalities, authorities and public trusts of which they are beneficiaries shall provide workers' compensation to their employees and elected officials engaged in either governmental or proprietary functions in accordance with this section. Such provision of compensation shall be paid for out of the funds of such entities.
¶ 7 Section 2b is a funding statute. It specifies the methods a public entity must use to finance its workers' compensation coverage. Subsection 3 of the same section specifies the means by which a board of education should secure workers' compensation coverage for its liability to injured employees. Subsection 3 provides:
 Boards of education, their instrumentalities and public trusts of which they are beneficiaries shall insure against their liability for workers' compensation with the State Insurance Fund; or through any combination of the following may:
 a. Self-insure and make any appropriation of funds to cover their risk;
 b. Secure reinsurance or excess insurance over and above a self-insured retention in any manner authorized by subsection B of 51 O.S. 168 of the Oklahoma Statutes; or
 c. Insure with other insurance carriers licensed in the State of Oklahoma.
85 O.S. 2b(A)(3) (1989) (Emphasis added).
¶ 8 Pursuant to 85 O.S. 2b(A)(3), a board of education, i.e., a school district, may insure against workers' compensation liability with the State Insurance Fund. If the Board does not insure with the State Insurance Fund, then under 85 O.S.2b(A)(3) it may choose to be covered in a combination of 3 ways: a) be self-insured, b) secure re-insurance of excess insurance above the self-retention in accordance with 51 O.S. 168 (1981); or c) insure with licensed insurance companies. Of importance is the statutory language of subsection (A)(3)(a) that if a board of education opts to be self-insured, it must "make any appropriation of funds to cover its risk." The statute does not give the board discretion to make appropriation. The use of the word "and" after "self-insure" leads to the inevitable conclusion that the Legislature mandated the board of education to make appropriation to cover its workers' compensation needs.
¶ 9 The provisions of 51 O.S. 168 (1981) (of the Tort Claims Act) in this instance, only apply when the school district seeks to obtain reinsurance or excess coverage. See 85 O.S.2b(A)(3)(b) (1989). Further support for this reasoning is found in the wording of 51 O.S. 168 (1981) which is similar to 85O.S. 2b(A)(3) (1989).[1] 85 O.S. 168 states as follows:
Section 168. School districts — Insurance
 B. Any insurance authorized by law to be purchased, obtained or provided by a school district may be provided by:
 1. Self-insurance, which may be, but is not required to be, funded by appropriations to establish or maintain reserves for self-insurance purposes. Any self-insurance reserve fund shall be non-fiscal and shall not be considered in computing any levy when the school district makes its annual estimate for needed appropriations;
 2. Insurance in any insurer authorized to transact insurance in this state.
 3. Insurance secured in accordance with any other method provided by law; or
 4. Any combination of insurance authorized by this section.
¶ 10 Our analysis of 85 O.S. 2b, also indicates that the methods provided for funding are exclusive. The operative word through-out this statute is "shall." The word "shall" in a statute is generally construed to impose a mandatory duty.Schaeffer v. Schaeffer, 743 P.2d 1038 (Okla. 1987). It is equivalent to the term "must" requiring interpretation as a legislative command. Fuller v. Odom, 741 P.2d 449 (Okla. 1987).
¶ 11 All public entities, whether they are a state agency, an institution of higher education, a governing board, or a municipality "shall" secure workers' compensation coverage for its employees under 85 O.S. 2b(A). The coverage for such workers' compensation "shall be in accordance with this section." The Legislature also mandates that the workers' compensation coverage, which is an expense, "shall" be paid from the entities' own funds.
¶ 12 The mandate applies to all public employers. Subsection (A)(1) of 85 O.S. 2b, for example, requires all state agencies including the institutions of higher education to insure with the State Insurance Fund; and, unless the State Insurance Fund refuses to accept the risk, or, unless otherwise authorized by law, the state agency shall not insure with any other insurer. The state agency is also entitled to be self-insured. The exact procedure for maintaining and carrying self-insurance is specified in that subsection. Similarly, subsection (A)(2) of 85O.S. 2b specifies the various ways in which a county public employer and a municipal employer "must" secure compensation for its injured employees. These provisions 85 O.S. 2b(A)(1) do not govern the school district; but they are relevant to show that85 O.S. 2b prescribes exclusive methods for funding workers' compensation coverage for public employees.
¶ 13 This conclusion is compatible with Rule 2 of the Workers' Compensation Court Rules. Rule 2 was enacted in conformity with85 O.S. 61 (1989). It governs the procedure for providing notice to the court and satisfying proof of a self-insured employer's (from public or private sector) financial ability to pay the required workers' compensation coverage.[2] Rules and regulations enacted by a court and or an administrative agency pursuant to statute have the force and effect of law.Texas Oklahoma Express v. Sorenson, 652 P.2d 285 (Okla. 1982).
¶ 14 The analysis is also compatible with 85 O.S. 61's (1989) require ments that the employer provide prior proof of financial ability to secure workers' compensation coverage. It is equally compatible with the public policy that a governmental entity should be able to provide or secure workers' compensation coverage for its employees. Under the Act 85 O.S. 2b is in fact the only statutory provision for funding workers' compensation coverage for eligible public employees.
ANALYSIS OF 85 O.S. 42 (1989)
¶ 15 Title 85 O.S. 42 (1989) is not a funding statute. It does not address the funding of workers' compensation liability coverage. There is certainly no language in the statute for securing workers' compensation coverage by a public employer. On the contrary, it outlines the collection procedure available to an injured employee. Under the statute, the aggrieved school district employee may obtain judgment on his award and proceed to execution if the school district employer fails to compensate him for his injury or pay his workers' compensation award.
¶ 16 To reiterate, the issue as stated above, is whether a school board which has opted to be self-insured under 85 O.S.2b(A)(3) has the right to not allocate appropriations (and/or obtain reinsurance or excess insurance) for its workers' compensation risk, but to fund its consequent liability by allowing judgment to be taken by the injured employee and then proceeding to levy taxes for payment of the judgment from its sinking fund.
¶ 17 Analysis of the funding mechanism of 85 O.S. 2b(A)(3) confirms that the methods provided for a school district to finance its workers' compensation coverage are exclusive. The statute, on its face is clear on this point. Likewise our analysis of 85 O.S. 42 indicates that it is not intended for funding workers' compensation coverage but solely provides the mechanism for collecting judgments.
¶ 18 Any contrary reading would excuse the school district from complying with 85 O.S. 2b. It would also make the provisions of85 O.S. 61(d) (1989), and Rule 2 of the Workers' Compensation Court Rules inapplicable. It would also make the penalties for violating these provisions, as set forth in 85 O.S. 61(d), 85O.S. 63 and 85 O.S. 63.1 (1989) inapplicable.
¶ 19 Additional support is found in the Supreme Court's pronouncement in Southwestern Bell v. Okla. Co. Excise Board,618 P.2d 915 (Okla. 1980), (rehearing dismissed). In theSouthwestern Bell case, the Supreme Court considered a similar issue under a prior statute (85 O.S. 149 (1977)). That statute required a municipal entity to insure against workers' compensation liability with the State Insurance Fund, and if the Fund refused to carry the risk then the municipality could purchase other insurance or carry its own risk. If the municipality opted for self-insurance, the statute provided (unlike the existing 85 O.S. 2b) that the municipality "may" appropriate monies for this purpose. 85 O.S. 149 then provided specifically that the State Insurance Fund could obtain a judgment and collect for any unpaid premium.
¶ 20 In that case, the City of Oklahoma City failed to pay its premiums to the State Insurance Fund. It allowed the Fund to reduce the lien to a judgment. The judgment was sold properly under 85 O.S. 149 and the buyer proceeded to levy taxes for payment from the sinking fund. Southwestern Bell protested. The Tax Court held that the payment of premiums from the sinking fund was in violation of the Oklahoma Constitutional provision requiring the municipality to be on a "cash basis." Okla. Const. Article X, Section 28.
¶ 21 The Supreme Court affirmed the Tax Court although it ruled that its judgment in that case was prospective only. The Court reasoned that the specific provisions of funding in 85 O.S. 149
(1977) controlled over the general payment of judgment provisions of the sinking fund statute, (62 O.S. 362 (1971)). Second, a judgment could be properly rendered against the municipality because 85 O.S. 149 did not require the municipality to fund compensation coverage from appropriations or prove that such entity had the financial ability to pay the premium debt underlying the judgment. But a judgment which was not supported by appropriation, was in violation of Article X, Section 28, of the Oklahoma Constitution. Title 85 O.S. 149 (1977) was repealed in 1982 after that decision, and 85 O.S. 2b was also amended to correct the inequities pointed out by the Court.
¶ 22 The rationale of the Court in the Southwestern Bell
case, is applicable to this issue even though it was decided in the context of a prior statute. The specific mandatory provisions of 85 O.S. 2b (1989) control the method available to a board of education to fund its workers' compensation coverage. Equally persuasive is the Court's reasoning that funding workers' compensation coverage by paying a judgment from the sinking fund is in violation of Okla. Const. Article X, Section 28.
¶ 23 For the foregoing reasons, a school district or a board of education should not utilize the sinking fund to finance its workers' compensation coverage. Instead the explicit provisions of 85 O.S. 2b(A)(3) (1989) should be used to pay for its workers' compensation coverage.
¶ 24 It is, therefore, the official opinion of the AttorneyGeneral that a board of education that is self-insured forworkers' compensation coverage must utilize the exclusive fundingmethods mandated in 85 O.S. 2b(A)(3) (1989) for suchpurposes. A board of education may not utilize the procedures of85 O.S. 42 (1989) to fund its workers' compensation coveragein lieu of appropriating funds because 85 O.S. 42 is not afunding statute. 85 O.S. 42 is intended to be used solely asa mechanism for collecting judgments.
ROBERT H. HENRY ATTORNEY GENERAL OF OKLAHOMA
YASODHARA M. MOHANTY ASSISTANT ATTORNEY GENERAL
[1] Section 168, however, additionally states that the reserves for reinsurance and excess insurance are non-fiscal.
[2] Rule 2 provides:
 "A governmental entity may make application to carry its own risk without insurance provided it furnishes the Court with reasonably detailed information relative to its financial status, including a definite statement of the amount it has specifically appropriated for workers' compensation claims. Proof of reinsurance or other information regarding the governmental entity's ability to fund its obligation under the Workers' Compensation Act may be required."